# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 1:09CR00045 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **ROBERT GBANAPOLOR,** | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

*Craig J. Jacobsen, Assistant United States Attorney, Roanoke, Virginia, for United States; Helen E. Phillips, McGlothlin and Phillips, PLLC, Lebanon, Virginia, for Defendant.*

The defendant was convicted by a jury of three counts of making false statements before a grand jury in violation of 18 U.S.C.A. § 1623 (West 2000). He has filed a Renewed Motion for Judgment of Acquittal and Motion For a New Trial, which, for the reasons that follow, will be denied.

I

The defendant, an inmate at the United States Penitentiary Lee County ("USP Lee"), located in this judicial district, was called before the grand jury investigating the killing of his cell mate, Quentin Corniel, also known as "Q," by a third inmate, Willie Bush, also known as "Lar Dog." At the time, the government was in possession of a video of the prison yard showing "Q" and the defendant walking side-

by-side together, when Bush approaching the two, and the defendant held out his hand to Bush. Bush is then seen suddenly stabbing "Q" repeatedly, as the defendant stood a few feet away. The video then showed "Q" running to escape Bush before finally falling to the ground, with the defendant following. In his testimony before the grand jury, the defendant denied that he had seen the attack. He further denied that he had earlier reported details of the attack in an interview by an FBI agent. The government contended that these statements were knowingly false, in light of the video evidence and the defendant's earlier statements to the FBI agent.

The convictions here must be sustained if, viewed in the light most favorable to the government, there is substantial evidence to support them. *See Glasser v. United States*, 315 U.S. 60, 80 (1942). In the context of a criminal action, the Fourth Circuit has defined substantial evidence as "that evidence which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" *United States v. Newsome*, 322 F.3d 328, 333 (4th Cir. 2003) (quoting *United States v. Burgos*, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc)). In making a sufficiency determination, the court must evaluate the cumulative evidence in its totality—in other words, "we must not rend the garment of which the evidence is woven lest we analyze each individual fiber in isolation." *Burgos*, 94 F.3d at 863.

The Indictment charged the defendant with knowingly making the following false statements before the grand jury:

> Q: I'm gonna direct your attention to an incident which occurred on September 30th of last year, 2008, at USP Lee and specifically let me ask you do you know that "Q" was killed?
>
> A: Yes, a correction officer told me.
>
> Q: Okay. And were you present, when he was killed?
>
> A: No, I wasn't there.
>
> Q: You weren't there at all?
>
> A: No.

(Indictment, Count One.)

> Q: Okay. Did you ever see Bush come to "Q" and attack him, as you were walking with "Q"?
>
> A: No, I, I didn't see that.
>
> Q: Did you ever see both of them fight on, and this is on September 30th of 2008?
>
> A: No, I never seen that.

(*Id.*, Count Two.)

> Q: Did you tell the person that interviewed you that you were returning from the prison yard and you were walking besides "Q" and Bush approached him as you were walking and that you stuck out your hand to Bush and said:

> "give me some love" and then you refused to say anything else, saying "Check the cameras"?
>
> A: No.
>
> Q: Did you say that?
>
> A: No.
>
> Q: No?
>
> A: No, I didn't never say nothing like that.

(*Id.*, Count Three.)

The jury in this case was instructed without objection as to the elements of the crimes charged, as follows:

> In order to convict the defendant of violation of this statute, the government must prove the following elements beyond a reasonable doubt:
>
> One: The defendant gave testimony under oath before a federal grand jury;
>
> Two: This testimony was false;
>
> Three: The defendant knew that the testimony was false when he gave it; and
>
> Four: The false statement was material to the grand jury's investigation.
>
> False testimony is material if it has the natural effect or tendency to impede, influence or dissuade. In other words, testimony would be material if it has a tendency to

influence or is capable of influencing the grand jury. It is not necessary for the government to prove, however, that the act or the omission actually influenced or misled.

In reviewing the statement which is alleged to have been false, you should consider the statement in the context of the sequence of the questions asked and the answers given, and the words used should be given their common and ordinary meaning unless the context clearly shows that a different meaning was mutually understood by the questioner and the witness.

If you should find that a particular question was ambiguous and that the defendant truthfully answered on reasonable interpretation of the question under the circumstances presented, then such answer would not be false. Similarly, if you should find that the question was clear, but the answer was ambiguous, and one reasonable interpretation of such answer would be truthful, then such answer would not be false.

If you find that an answer was literally or technically true, then any intent on the part of the defendant to be ambiguous, to confuse, to evade, or even to mislead is irrelevant and you must acquit the defendant.

(Instruction No. 12.)

A transcript of the defendant's entire testimony before the grand jury was admitted into evidence without objection, and in his oral motion for judgment of acquittal made during trial, the defendant argued that the context of the charged statements showed his innocence. He argued that as to Count One, where he denied being present when "Q" was killed, the charged statements must be considered in the

light of his other testimony where he admitted being in the same "area" and having "walked in the yard" with "Q."[1] As to Count Two, it was argued that his answer was literally true, because Bush's attack on "Q" was unprovoked, and there was no "fight," since "Q" only tried to flee.

Finally, as to Count Three, the defendant contended that he had elsewhere in his grand jury testimony said that he did not "recall" seeing the attack.[2]

---

[1] Elsewhere in his grand jury testimony, the defendant answered as follows:

> Q So if a videotape showed you there as "Q" was being assaulted, that, that wouldn't be you on the videotape?
>
> A I was in the area as in, as in when I got arrested, but far as me . . .

(Gov't Ex. 1, p. 11.)

The defendant also answered as follows:

> Q Okay. And let me ask you before when you were – are you denying that you ever walked with "Q" in the yard before he was attacked?
>
> A Yeah, I think we walked in the yard together, I'm not mistaken.

(*Id.* at 12.)

Later in his grand jury testimony, the defendant finally admitted to being in the "immediate area" (*id.* at 14), but claimed that he had been "roughly" thirty feet away walking behind "Q," and had not seen the attack. (*Id.* at 15.)

[2] The defendant answered as follows:

> Q So if a videotape of the incident showed you with "Q" and then you standing there watching "Q" or "Lar Dog" attack "Q" and then after "Lar

It was also argued on behalf of the defendant that his statements before the grand jury were not material to its investigation of the homicide, because the government knew that the video clearly showed that Bush, and Bush alone, stabbed and killed "Q," and accordingly any knowledge that the defendant had about the homicide would be superfluous.

In his present motion, the defendant makes no new or different argument as to the sufficiency of the evidence. As I did at trial, I find that the evidence presented was clearly sufficient for a reasonable jury to find that the elements of perjury had been proved beyond a reasonable doubt.

The defendant alternatively moves for a new trial on all of these counts, also based on the insufficiency of the evidence. A new trial on this ground is to be granted only "sparingly" in the "rare circumstance when the evidence weighs heavily" against the jury's verdict. *United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008) (internal quotation marks and citation omitted). I find no such circumstances in this case. The

---

Dog" stabbed "Q," you went after "Lar Dog," that would be incorrect?

A I don't recall nothing of that.

(*Id.* at 15.)

evidence, in fact, was overwhelming that the defendant knowingly lied to the grand jury as charged.

II

The defendant also seeks a new trial on the ground of prosecutorial misconduct during closing arguments.

In her closing argument, defense counsel contended that the defendant's statements were not material, for the same reason urged in the defense motion for judgment of acquittal, that it, because the government knew who killed "Q" it did not need to call the defendant before the grand jury. In the government's rebuttal closing argument, the prosecutor, in an effort to meet that argument, stated to the jury:

> But to say that, you know, we should be ashamed of ourselves for calling in witnesses when we already had enough, you know, that again is also ridiculous, because I'll guarantee you if counsel was defending Bush, and we didn't call her client as a witness, what do you think she would be saying? Ladies and gentleman, I can't believe they didn't call Robert Gbanapolor, an eyewitness to this murder, to the grand jury. That's what she would be saying. You can't have it both ways.

During her argument to the jury, counsel for the defendant said to the jury:

> That is a dangerous man. Willie Bush is a dangerous man. And what did he say to my client when he had two guards standing on each side of him and they were taking

> him out? You heard Lisa Collins testify as to what he said. "I would get you if I could get to you." That's what this is about.

In response, in his rebuttal the prosecutor told the jury:

> The other thing about, you know, playing to your sympathy that Bush has somehow threatened the defendant, you haven't heard any evidence of that, and that does not come into play in your deliberations at all, because as soon as you do that, another jury will convict somebody based on prejudice.

No objection was made by defense counsel to either statement by the prosecutor, either before or after the jury retired to consider its verdict. In his Motion For a New Trial, the defendant asserts for the first time that these two statements by the prosecutor were improper and denied him a fair trial.

Even though the statements were not objected to, I may consider them under the plain error doctrine. Fed. R. Crim. P. 52(b); *see United States v. Olano*, 507 U.S. 725, 732 (1993) (holding that a plain error is one that affects a party's substantial rights, and "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings") (internal quotation marks and citation omitted).

In the present case, the prosecutor's statement in response to defense counsel's argument about materiality of the statements charged, while somewhat afield of the evidence in the case, was fair comment and not improper. As to the second statement,

while it was incorrect that there was no evidence that the defendant had been threatened by Bush, whether he had been or not was not really relevant to the issues. Of course, a prosecutor must not misstate the facts in closing argument. *United States v. Ollivierre*, 378 F.3d 412, 418 (4th Cir. 2004), *vacated on other grounds*, 543 U.S. 1112 (2005). However, the prosecutor's statement here was an isolated one over a collateral issue and could not be said to have seriously affected the trial's fairness or integrity, particularly since the defendant's guilt was overwhelming. *See United States v. Baptiste*, 596 F.3d 214, 226-28 (4th Cir. 2010).

III

For these reasons, it is **ORDERED** that the defendant's motions (DE 48) are DENIED.

ENTER: April 6, 2010

/s/ JAMES P. JONES
Chief United States District Judge